Next case for argument this morning, 19-3373, Eugene Scalia v. Red Lake Nation Fisheries, et al. Okay, Mr. Lerner. You need to turn your microphone, I think, Mr. Lerner. You hear me? Yes. May it please the court, I represent Eugene Scalia, Secretary of Labor, in this case. On November 6, 2017, a commercial fishing vessel owned and operated by Red Lake Nation Fisheries, Inc., the fishery, capsized in Lower Red Lake in Minnesota, and two employees not wearing personal flotation devices drowned. OSHA cited the fishery for not requiring the use of personal flotation devices and for not reporting the fatalities to OSHA in a timely manner. The fishery contested the citations, arguing that the Occupational Safety and Health Act, the OSHA Act, did not apply to it because it is an enterprise owned by the Red Lake Nation, an Indian tribe. The question before the court is whether the OSHA Act, an act that, quote, to assure so far as possible every working man and woman in the nation safe and healthy working conditions and to preserve our human resources, unquote, protects employees of such an enterprise. The secretary contends that it does. The fishery is a commercial entity owned and operated by the Red Lake Nation, an Indian tribe. There is no question that the fishery is literally an employer within the meaning of Section 3.5 of the OSHA Act 29 U.S.C. 652.5. The question, therefore, is whether the fishery is subject to the act under the precedence of the Supreme Court and the courts of appeals dealing with the applicability of general federal statutes to Indian tribes. The answer to that question is definitely yes. In Federal Power Commission versus Tuscarora Indian Nation, the Supreme Court observed that, quote, it is now well settled by many decisions of this court that a general statute in terms applying to all persons includes Indians and their property interests, unquote. Courts of appeal that have applied the OSHA Act as well as other general federal laws to Indian tribes have followed this rule. But what about our opinion in Fond du Lac where we do acknowledge that general rule from the Supreme Court and yet come out differently when it came to the sovereign rights of the tribe? Yes, Your Honor. This court did acknowledge the general rule and dealt with exceptions to that rule, the exception for self-government. But the court specifically dealt with a case involving the Age Discrimination Employment Act and said that not allowing the tribe to consider an applicant's age would impermissibly interfere with the tribe's sovereign rights. And the court said, held, the consideration of a tribe member's age by a tribal employer should be allowed to be restricted or not restricted by the tribe in accordance with its culture and traditions. Likewise, disputes regarding this issue should be allowed to be resolved internally within the tribe. Federal regulation of the tribal employer's consideration of age in determining whether to hire the member of the tribe to work at the business located on the reservation interferes with an intramural matter that has traditionally been left to the tribe's self-government. And then the court further emphasized that the ADA does not apply to the narrow facts of this case. And yet it was still, just to follow up, there are a lot of similarities, however, in the sense that this is indisputably a business that is, well, actually here, if I understand the facts correctly, all of the employees are tribal members, and I don't think that that was the case in Fond du Lac. But I think it's also undisputed that the fisheries themselves are run for the benefit of the tribe itself. So the only difference I see here that you've highlighted thus far anyway is age, is the two acts. And I'm wondering why or how we can put so much weight on that distinction when we have so many other similarities here, it seems, as we do in Fond du Lac. The reason why is that the court, the court does not merely mention age in the discussion of the procedural history of the case. The court's discussion of the consideration of age is embedded within the court's reasoning. And then the court goes on to say, we're confining the narrow facts of an age discrimination case. I mean, the court's focus on age actually makes sense. The way society treats its elderly is tradition-bound. For example, American Indians regard elderly people as wisdom keepers. In the Jewish tradition, an elderly person is exempt from the commandment to help a native. And for presidential candidates, we won't go there. Let me highlight to you, though. I think that Red Lake's case is stronger even than Fond du Lac because they have an argument about an explicit treaty fishing rights. And we said in Fond du Lac we had to rely on a general rule to self-govern on intramural affairs, whatever that means. And so what do you how do you address the treaty issue here that gives them more punch than Fond du Lac? Yes, they argue that there's a treaty fishing right, but they argue that we're modifying it. That is absolutely not so. In no way does OSHA regulation dictate how much fish may be caught, what type of fish may be caught, when fish may be caught, or how fish may be caught. The only thing OSHA is requiring is that employees riding on a boat wear personal flotation devices. It would make no difference to OSHA whether employees were fishing or were working for a tribal sightseeing business taking people out on boat rides. So if the tribe said, I'm making this up, I hope I don't offend anybody, I shouldn't say this, but I'm going to say it. If the tribe said it offends our religious beliefs to wear that thing when we fish, what do you think about that? Well, if they specifically said religious beliefs, then we would be dealing with the Religious Freedom Restoration Act, which has specific criteria. I shouldn't have introduced that red herring, but suppose they say it's the traditional way we've always done it. We didn't have flotation devices in the 19th century, for example. Okay, so you say that's part of their tradition. Right. We would still say that we win, because the fishing right, the right to fish is the right to actually catch the fish. The fact that there is some tradition of the tribe shouldn't bar the application of the OSHA Act. For example, it is a core Indian tradition to live on a reservation, to occupy a reservation. The mere fact that that is part of Indian tradition does not mean that any person, any Indian living on that reservation is completely free of federal law. The Indians, while occupying the reservation, are not allowed to sell cocaine or do counterfeiting or blow up a building, which was a case actually in the Seventh Circuit. So the mere fact that there's some kind of tradition out there does not bar the application of the OSHA Act. Again, if it was a religious— Well, just that tradition—and, of course, you can tell how clumsy I've done this, but still—is that tradition go with the treaty, though? Because that's what the treaty was trying to say. You get to fish. You've always fished. These are your rights. Yeah. Again, of course, the tribe has pointed out to no tradition of not wearing personal quotation marks in its brief. Counsel, let me ask, if I can. Yes. Have you read Judge Murphy's concurring opinion ignored against Kelly? Yes. In that 2008 case where she says—she makes the statement—she says, it's difficult to overstate the differences between the Red Lake Reservation and nearly all other Indian reservations. And then she goes in quite some detail talking about the distinctions here with respect to this particular reservation. Do you think that strengthens their position here, particularly in the absence of specific—a specific indication by Congress that these requirements should apply to this reservation? No, Your Honor. I don't think—first of all, it was just a concurring opinion. The decision of the court itself actually said that the tribal court had no jurisdiction. It was against Indian sovereignty in that case. Are her facts right? I was very interested in that, too. Are her facts basically right that this is different? Are the facts that Judge Kelly's reciting saying that Red Lake is very different than all the others—are her facts basically right or wrong, or do you know? The only thing I do know is that the tribe doesn't come under Minnesota criminal law like other tribes in Minnesota. But I think that's neither here nor there. Indeed, there was a case involving the Red Lake tribe under the Federal Records Act, which is a general federal law, and the Eighth Circuit ruled that the tribe was subject to the Federal Records Act. It didn't cite Tuscarora, but it did hold the tribe to the Federal Records Act requiring it to release certain records. So there is nothing that special about this tribe as opposed to other tribes like Coeur d'Alene and Mashantucket Sand and Gravel and Warm Springs and Menominee Tribal Enterprises. All these other tribes in the other circuits have been held liable under the OSHA Act. I bet you're into rebuttal. I bet you're into rebuttal. Again, I can't quite tell from the lights. Oh, am I? You're 249. Okay, so I'll stop now and reserve the time for rebuttal. Thank you. Okay, Mr. Plummer. Thank you, Your Honors. Good morning. My name is Joe Plummer. I'm here on behalf of Red Lake Nation Fisheries. Your Honor, as the court indicated, the Red Lake Nation is far different than any other reservation. It's the only reservation in the country that did not allot its lands. All of the lands are common, one large block of trust lands. Well, something that's very significant in this case is that this court's precedent, the framework that was established through the Fond du Lac heavy equipment case, is exactly the framework that the ALJ followed. The ALJ said, hey, if there's going to be an appeal of this case, it's probably going to go to the 8th Circuit. So I'm going to apply the right framework that's developed in the 8th Circuit. And he did. And because of the impermissible infringement on the tribe's right of self-governance and the impermissible infringement on the tribe's inherent right to exclude nonmembers, the dismissal of the citations was ordered. And we would ask this panel to affirm that. Something that's very important in this case that the government is not highlighting is the specific nature of the OSH Act itself. The William Steiger Act in 1970, the OSH Act, was enacted. And the specific constitutional authority is cited in the statute. This is very different from other federal laws of general applicability. The statute says that it's enacting the OSH Act under the authority of the Foreign Commerce Clause and the Interstate Commerce Clause. And it's completely silent as to the Indian Commerce Clause. And as the Court is aware, the Constitutional Commerce Clause provision says that Congress shall have the authority to regulate commerce with the four nations, between the several states, and with the Indian tribes. And rules of construction provide that if Congress leaves off one or more of a list that's usually read together, that's meant to mean that Congress intended to omit that. In this case, we submit that Congress's specific reference to the Interstate Commerce Clause and the Foreign Commerce Clause and their failure to add Indian commerce specifically intended that Indian commerce not be regulated through the OSH Act. Further evidence of that, Your Honors, is the complete absence in the whole text of the statute to the word Indian tribe or Indian entity, as well as the complete absence of any reference to Indian commerce in the 1,300-odd pages of legislative history for the OSH Act. So we submit that that's a pretty strong signal that Congress never intended to regulate Indian commerce. And we submit that this activity, this treaty-protected fishing activity, which was affirmed by this Court in 2015 in the Mike Brown case, the Square Gardens, what we refer to it as, affirmed the exclusive on-reservation right to catch and sell fish. And it's our position that OSHA's interference with that exclusive treaty right to engage in Indian commerce, quintessential Indian commerce, and not interstate commerce, is violative of what the Court has told us about not infringing on... Mr. Plummer, address his argument that I misled...we took a while to get to it, but address his real argument, which is we're not affecting your fishing. Fish all you want to, as much as you want to, if as many as you want to, whenever you want to. We just want you to wear a life jacket. Well, two things, Your Honor. One, the fishery has a robust safety protocol for its fishermen. And we're, of course, very sorry that a couple of our tribal members died as a result of this incident. And we can't be responsible, provide all the equipment, go through all the robust training. And if something like this happens, we're not out on the boat with them. They have radios. It's a very unfortunate situation. But also in response to your question, Your Honor, the interferences with the tribes to regulate its own internal Indian commerce with its own members. This fishing activity is not just a commercial enterprise. This is a cultural enterprise that's been going on for hundreds of years. Well, it's cultural and commercial, right, Counsel? You'd agree to that, for sure. It's Indian commerce, Your Honor, and it's not interstate commerce. And we refer to it as quintessential Indian commerce. This is something that's been well recognized. And because of the nature of the treaty rights that are at issue in the case, this court has been very consistent. You know, the Jackie White case of 1974, the alleged violation of the Bald and Golden Eagle Protection Act. This court decided that that activity was a protected treaty right, an inherent treaty right of the tribe and its individual members to hunt unregulated by federal statutes. An issue in the Brown case from 2015 was a similar right, an alleged violation of a bunch of fishermen from Leech Lake and Red Lake who were accused of violating the Lacey Act, another federal law of general applicability. And the Lacey Act, Judge Thunheim had the case at the trial court level, and he did his own treaty investigation and historical research himself and came up with an argument that we've been raising for years. And that is that the 1837 treaty, which was the first one that affected Minnesota territory, guaranteed the right to fish and gather off the reservation. The chiefs at the time, and Judge Thunheim indicated this in his record in the Square Hook case, is that the fishing and using the resources off the land, making the sugar from the trees and using the rivers and the lakes is more essential or as least essential as the air that the Indians breathed. And Chief Flatmouth from Leech Lake articulated that, and Judge Thunheim thought that was very significant. Let me interrupt you because you said a magic word when you said preserve. Yes. And I remember the other side's brief where they said this idea that you look at that Congress is only talking here about the interstate foreign commerce clause and not about Indian commerce, you didn't begin to raise that at any lower level. That is a made for appeal point. What do you say to that? Well, your honor, as we in our server reply brief, we point out that the decision relied on by the government only applies to the petitioners. The petitioners in this case are the government, not us. We're not bound by that. And also, be careful because that can be a basis to remand, for example. Yeah, I understand, your honor. OK, so address the real point. Why wasn't it raised before at any time? Well, it was. This is just an amplified version of it, your honor. This is an amplified version. You know, the commerce clause is three parts, and we raised this, you know, as in response to what the government raised in their opening brief. Thank you. Thank you. Counsel, you mentioned a moment ago that you were talking about or you alluded to the safety practices of the fishing component or the fishing industry of the tribe there. Does the record contain information with respect to that? It doesn't, your honor. You know, we looked at it and it does not include if the court would like me to supplement with the procedures that the fishery follows, I can do that. Well, I'll leave that to your discretion as to whether you think you can do it at this point. But I was just curious if, you know, it could be significant if this, if these drownings, for example, were the result of perhaps violations of the fishery's own practices and regulations. I think maybe there's a danger that this could be portrayed as just maybe an unsafe, a perpetually unsafe industry there on the reservation. So I was just curious as to what you would have to say about that and what the record can tell us. Well, your honor, the record does not include the safety procedures that I referenced. And there's not a separate criminal statute, you know, that or otherwise regulatory statute through the tribal code that would permit penalties, you know, for the fishery as a result of some shortcomings in some of the. The question it was mentioned earlier in the argument, I think I saw it in the briefing that. The employees, the workers in the fishery are tribal members. Now, is that is that just the way it it worked out or is there are there some restrictions for that that limit participation in the fishery industry there to tribal members? Yes, there is, your honor. There's also a fishery association, which is more of an advisory board, but it's an advisory board of old fishermen, you know, people that have been working in that industry their whole lives. And so they meet monthly and they they're like they advise the younger people that are engaged in this activity. So and then finally, am I correct in my understanding that because of the differences between the Red Lake tribe and its own and its ownership of its property and industries, the differences between that and perhaps other reservations, it was it was noted that there is not private ownership, for example. Does that hold true with respect to the fishery? It does, your honor. I'm sorry I didn't answer that part of your question. All of the members, you know, everybody that works at the fishery, there's very few non-Indian residents of the reservation. They're mostly spouses, you know, of Red Lake members. But that advisory board that I was talking about provides for the employment of only Red Lakers in the fishery activities. There's no non-members that work in this whole industry. All the way down, you know, from providing the equipment to going out, you know, doing the fishing, to cleaning the nets, to making the nets, putting the mag or putting the weights on one end and the floaters on the other end. Lots of people are involved in in this industry. Young people, you know, take care through the nines and going out on the boats, activities, cleaning the nets. These are 300-foot nets. So you have kids, you know, in summertime that their jobs are to clean the nets, take the walleyes out of the nets and hang the nets and make sure they're not all tangled up. So once they drive... Counsel, counsel, of course, our Fond du Lac case is 93. Congress has done nothing on that under the EEOC, right? Correct. Good. Can Congress change OSHA and its definition of employer to include tribe? Yes, it can, your honor. Congress has the plenary authority to legislate in the areas of Indian affairs, and they've chosen not to do so. Yes, thank you. That is my point. Okay. Counsel, the ALJ relied very heavily on Fond du Lac, our case. And as I read it sort of maybe didn't expressly say it, but suggested that maybe if this were some in another circuit, the answer might be different. And maybe this is too broad of a question, but I wondered if you had a reaction to that. Do you think that this case is different because it's in the Eighth Circuit and we have Fond du Lac and it would be treated differently in maybe the Ninth or one of the other circuits? Yes. Yes, I agree with that, your honor. We believe that this court's precedent in Fond du Lac in the Eighth Circuit and the Tenth Circuit's precedent in Donovan versus Navajo Forest products are the correct decisions. They're the most respectful of the circuits of tribal sovereignty. The other ones that have bought into this Coeur d'Alene framework in the Ninth Circuit did it out of – this is our position that they adopted this framework of Coeur d'Alene out of convenience because they're not as familiar. As the Eighth and the Tenth Circuits are with Indian country and we believe that it's improper, not respectful of tribal sovereignty and would not be a good road for this court to go down. We firmly believe that that was the correct decision and we believe our facts are even stronger than the Fond du Lac facts. A cert's never been granted and even taken away later or anything like that or responses. Do you know on any of these cases? Because this goes back to, goodness gracious, 85-ish with a conflict. Or 82. Donovan's 82. So 85. 82, 85. Have they ever granted cert on any of these? Not that we're aware of, your honor. You get the point of my question. Not to go to decision but grant it and take it back and something in response. Not to your knowledge. Thank you. And we believe, your honor, I'm just speaking frankly, that there may be something coming out of this case. Thank you. We just request that you just affirm the ALJs. Thank you very much. Concludes your argument. Mr. Lerner, we're back to you. Yes. On the Indian Commerce Clause argument, as your honor has rightly pointed out, it was not raised below. It's a separate argument. It's based upon a constitutional provision. It was not cited in the briefs to the commission. And it's an exception of the fisheries brief to this court. But even if the court does consider that issue, no courts have ruled that a general federal statute has to mention the Indian Commerce Clause in order for the law to apply to Indians. For example, the D.C. Circuit in Navajo Tribe v. NLRB applied the National Labor Relations Act, which doesn't mention the Indian Commerce Clause. They applied it on the reservation. There wasn't a need for that. The Occupational Safety and Health Review Commission in Turning Stone Casino Resort said the same thing about the object, the mere fact that it's not mentioned does not mean that it can't apply. Because basically to say that would basically turn the Tuscarora rule, the general rule, the general statute supply on its head. The Indian Commerce Clause is there, but it's a special kind of provision that gives Congress plenary power over Indians more so than in the situations involving regular commerce. So, for example, under the Indian Commerce Clause in Title 25, Congress regulates child custody and education and deeds and all kinds of things which it would never do with respect to situations like that in, you know, just regular legislation. It's almost like a plenary power like Congress has over territories or over the District of Columbia. So if the court does that, for example, the statutes that the court applied to Indians, the criminal cases, Wadena, Stone, and the tax case hold, those statutes don't mention the Indian Commerce Clause. And yet the court applied the law in that situation. Mr. Lerner, you've used your time. Oh, okay. Thank you for your argument. Thank you.